**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Eugene Edward Canez,<br><br>    Plaintiff,<br><br>v.<br><br>Nancy A. Berryhill,<br><br>    Defendant. | No. CV-18-00191-TUC-LCK<br><br>**ORDER** |

Plaintiff Eugene Canez brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of a final decision by the Commissioner of Social Security (Commissioner). Canez filed an opening brief, Defendant filed a brief requesting remand, and Canez filed a reply. (Docs. 16, 20, 22.) The parties have consented to Magistrate Judge jurisdiction. (Doc. 13.) Based on the pleadings and the Administrative Record, the Court remands this matter for benefits.

## PROCEDURAL HISTORY

Canez filed an application for Supplemental Security Income (SSI) in December 2013. (Administrative Record (AR) 185.) He alleged disability from December 19, 2006. (*Id.*) Canez's application was denied upon initial review (AR 64-76) and on reconsideration (AR 77-90). A hearing was held on January 23, 2017 (AR 33-53 ), after which the ALJ found that Canez was not disabled because he could perform other work available in the national economy (AR 15-26). The Appeals Council denied Canez's request to review the ALJ's decision. (AR 1.)

# FACTUAL HISTORY

Canez was born in 1964 and was 49 at his protective filing date. (AR 185.) Canez has past relevant work as a nursing home housekeeper and a yard worker. (AR 24, 37, 38.)

The ALJ found Canez had severe impairments of degenerative disc disease and right eye blindness. (AR 17.) The ALJ determined Canez had the residual functional capacity (RFC) to perform:

> Light work as defined in 20 CFR 416.967(a), specifically the Claimant can lift and carry twenty pounds occasionally and ten pounds frequently, stand or walk for six hours total, and sit for six hours total in an eight-hour workday. However, the climbing of ramps and stairs must be limited to occasionally, while the climbing of ladders, ropes, and scaffolds must be entirely precluded from work duties as assigned. Stooping or bending at the waist are limited to occasionally. Kneeling, crouching, bending at the knees, and crawling must be entirely precluded from assigned work duties. Tasks requiring depth perception or field of vision must likewise be entirely precluded from duties as assigned. Finally, exposure to dust, odors, and gases must be precluded entirely from within the assigned work area.

(AR 19.) The ALJ concluded at Step Five, based on the Medical-Vocational Rules and the testimony of a vocational expert (VE), that Canez could perform work that exists in significant numbers in the national economy (fast food worker and cashier II). (AR 25.)

# STANDARD OF REVIEW

The Commissioner employs a five-step sequential process to evaluate SSI claims. 20 C.F.R. § 416.920; *see also Heckler v. Campbell*, 461 U.S. 458, 460-462 (1983). To establish disability the claimant bears the burden of showing he (1) is not working; (2) has a severe physical or mental impairment; (3) the impairment meets or equals the requirements of a listed impairment; and (4) claimant's RFC precludes him from performing his past work. 20 C.F.R. § 416.920(a)(4). At Step Five, the burden shifts to the Commissioner to show that the claimant has the RFC to perform other work that exists in substantial numbers in the national economy. *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007). If the Commissioner conclusively finds the claimant "disabled" or "not disabled" at any point in the five-step process, she does not proceed to the next step. 20 C.F.R. § 416.920(a)(4).

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) (citing *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989)). The findings of the Commissioner are meant to be conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is "more than a mere scintilla but less than a preponderance." *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999) (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)). The court may overturn the decision to deny benefits only "when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole." *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001). This is so because the ALJ "and not the reviewing court must resolve conflicts in the evidence, and if the evidence can support either outcome, the court may not substitute its judgment for that of the ALJ." *Matney*, 981 F.2d at 1019 (quoting *Richardson v. Perales*, 402 U.S. 389, 400 (1971)); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1198 (9th Cir. 2004). The Commissioner's decision, however, "cannot be affirmed simply by isolating a specific quantum of supporting evidence." *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998) (citing *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)). Reviewing courts must consider the evidence that supports as well as detracts from the Commissioner's conclusion. *Day v. Weinberger*, 522 F.2d 1154, 1156 (9th Cir. 1975).

## DISCUSSION

Canez argues the ALJ erred in five ways: (1) in finding Canez could stand and/or walk for 6 hours per workday; (2) in finding Canez did not need a cane to stand and/or walk; (3) in finding Canez could perform prolonged standing and/or walking; (4) in finding Canez could work as a fast food worker despite an RFC that prohibited exposure to dust, odors, and gases; and (5) in not finding Canez disabled at Step Five based on an accurate RFC. Canez requests a remand for the award of benefits or, alternatively, a remand that includes all identified errors.

Defendant agrees the ALJ erred as to Canez's claim 1 by rejecting without explanation Dr. Hassman's opinion that Canez could stand and/or walk for only three hours

in an eight-hour day. Defendant argues that further proceedings are necessary, and she disagrees with Canez's request for an award of benefits. Defendant argues there are conflicts in the record that the ALJ must resolve: Dr. Hassman's opinion on Canez's standing and walking abilities conflicted with the opinions of Drs. Fahlberg and Hirsch; and examinations from various doctors were in conflict regarding whether Canez's gait was impaired and if he needed a cane. Other than her citations to conflicting evidence, Defendant's brief did not address the substance of Canez's claims of error numbered by the Court as two through five.

As discussed below, the Court finds Canez's first three claims dispositive and, therefore, does not address his last two arguments.

**Canez's Need for a Cane**

The ALJ rejected examining physician Dr. Hassman's finding that Canez needed a cane to ambulate. (AR 22-23.) During her examination, Dr. Hassman observed that Canez leaned heavily on a cane to avoid weightbearing on his right leg, putting most of his weight on his left leg, and he experienced pain when putting weight on his right leg. (AR 335-36.) Canez used a cane throughout the standing portion of the exam. (*Id.*) Dr. Hassman found poor lumbar range of motion due to pain and lumbar pain with right hip range of motion. (AR 336.) Dr. Hassman also recorded a positive straight leg raise (SLR) test. (*Id.*) Based on Canez's range of motion, SLR test, and muscle tenderness, Dr. Hassman diagnosed Canez with chronic low back pain. (AR 337.) Dr. Hassman concluded that a cane was medically necessary for Canez on all terrains due to pain. (AR 338.)

The ALJ rejected Dr. Hassman's opinion that Canez needed a cane because it was likely based on Canez's report that he had been using a cane for a long time and Canez's demonstration of a subjective need for a cane. Further, the ALJ determined the finding was inconsistent with certain normal exam findings. (AR 22-23.)

The opinion of an examining physician generally is afforded more weight than a non-examining or reviewing physician's opinion. *See Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). Here, the opinion of Dr. Hassman was contradicted by reviewing

physicians Drs. Fahlberg and Hirsch. When there are contradictory medical opinions, to reject an examining physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Lester*, 81 F.3d at 830; *Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005).

The ALJ erred in rejecting Dr. Hassman's opinion because it was based on Canez's historical use of a cane and on "the doctor's observations of the claimant's subjective demonstration of his need for the cane to avoid weight bearing on the right leg." (AR 22-23.) Dr. Hassman supported her finding that a cane was medically necessary for Canez on all terrains by stating: "Claimant has been using a cane on and off since the 1990s. He has pain with weightbearing on the right lower extremity and uses a cane to decrease stress on the right lumbar area by decreasing weightbearing on the right lower extremity." (AR 338.) Although Dr. Hassman noted Canez's long-time periodic use of a cane, she conducted a physical exam, which the ALJ found to be thorough and consistent with her opinion. (AR 22.) As part of the exam, she asked Canez to perform numerous movements including walking, standing, heel walking, toe walking (unable to do), hopping (unable to do on right foot), tandem walking, and bending. (AR 335-36.) During those activities, Dr. Hassman observed Canez had an inability to bear weight on his right leg without pain. (*Id.*) It was not legitimate for the ALJ to conclude Dr. Hassman's opinion was based on Canez's "subjective demonstration" when it was based on a series of clinical tests.

The ALJ also concluded that medical necessity of a cane was inconsistent with several of Dr. Hassman's physical findings. This determination was contrary to the ALJ's general finding that Dr. Hassman's opinion "was consistent with her physical examination findings." (AR 22.) The ALJ discounted Dr. Hassman's opinion, in part, based on her finding that Canez had "poor lumbar range of motion associated with pain." (AR 336.) The governing regulations consider range of motion restrictions to be objective medical evidence relevant to evaluating the intensity of a claimant's symptoms. 20 C.F.R. § 416.929(c)(2). A finding of limited lumbar range of motion supported Dr. Hassman's opinion rather than providing a legitimate basis to reject it.

Next, the ALJ discounted Dr. Hassman's opinion based on certain normal examination findings: normal lower extremity sensation, a straight spine, no tenderness over the lumbar spine, minimal pain with side bending, no pain in knees and ankles, and no atrophy, tenderness or edema in either leg. To a lay person, there is no apparent contradiction between these normal findings and Canez needing a cane due to back pain and inability to bear weight on his right leg. When Dr. Hassman considered all her examination findings, the normal results as well as Canez's avoidance of weightbearing on his right leg, tenderness and hypertonicity over right lumbar muscles, poor lumbar range of motion with pain on forward and back bending, positive SLR test, lumbar pain on rotation of right hip, and absent ankle reflexes, she found a cane medically necessary. (AR 336-37.) The ALJ imposed her own lay-person interpretation on Dr. Hassman's findings,[1] which she was not qualified to do; therefore, it was not a legitimate reason to discount an examining doctor's opinion. *See Pina v. Berryhill*, No. CV 16-00354-TUC-BPV, 2017 WL 4216253, at *9 (D. Ariz. Sept. 22, 2017); *Winans v. Colvin*, No. CV-13-613-BPV, 2014 WL 4259471, at *6 (D. Ariz. Aug. 29, 2014) (holding substantial evidence does not support an ALJ's decision that substitutes her opinion of the medical findings over that of a physician); *see also Lapeirre-Gutt v. Astrue,* 382 Fed. App'x 662, 665 (9th Cir. 2010) (finding that lack of muscle atrophy as a sign of low activity was an assumption by the ALJ without support in the medical record).

The two reasons identified by the ALJ as her basis to discount Dr. Hassman's opinion are not legitimate or supported by substantial evidence. The ALJ mentioned repeatedly in her opinion that there was conflicting evidence on whether Canez needed a cane some or all the time. (AR 20-24.) She did not, however, directly rely on this evidence as a reason to discount Dr. Hassman's opinion. However, because Defendant relies upon

---

[1] The State agency medical consultants rejected all of Dr. Hassman's conclusions; however, their decisions were not based on the consultants' interpretation of Dr. Hassman's findings. (AR 72, 85.) Instead, the consultants found Dr. Hassman's opinion was based on Canez's subjective complaints that they concluded were not credible. (*Id.*) The ALJ did not rely on their opinions or reasoning in rejecting Dr. Hassman's opinion, which the ALJ determined was supported by Dr. Hassman's thorough examination.

those findings to conclude there are unresolved factual conflicts in the record, the Court discusses this portion of the ALJ's decision.

The ALJ's discussion of the conflicting evidence regarding Canez's gait is itself inconsistent. First, the ALJ noted that some medical records documented a normal gait, while others noted an antalgic gait and the use of a cane. (AR 22.) The ALJ then concluded that, despite the mix of evidence on Canez's use of a cane, Dr. Hassman's opinion (which included a cane as a medical necessity) was consistent with her examination findings. (*Id.*) But, the ALJ rejected Dr. Hassman's conclusion that Canez needed a cane. Next, the ALJ rejected the State agency medical consultants' opinions that Canez could do medium exertion work because evidence "demonstrate[d] the use of a cane as well as limitations in walking that would limit the Claimant to a light exertional level."[2] (AR 23.) After noting that the consultants did not have the opportunity to review evidence of Canez's walking limitations, the ALJ adopted the consultants' opinion that Canez could walk or stand six hours per workday. (AR 19, 72, 87.) The ALJ then concluded that Canez did not have a medical necessity for a cane "on a consistent basis." (*Id.*) That finding implicitly included a determination that Canez would need a cane at least some of the time. However, the ALJ wholesale rejected Dr. Hassman's finding that Canez needed a cane, and the ALJ included no use of a cane in Canez's RFC.

The ALJ cited the following records as documenting that Canez had a normal gait and/or an ability to exercise: at a September 28, 2015 appointment with a pulmonologist, Canez was documented with a normal gait (AR 484); hepatologist Dr. Iftikhar recorded a normal gait in June 2014, and April and December 2016 (AR 455, 459, 543); and Dr. Nabha (a kidney specialist) noted a normal gait at March 2015 and March 2016 appointments (AR 513, 527). The ALJ also noted that cardiologist, Dr. Lancaster, recorded a normal gait and

---

[2] The State agency medical consultant that conducted the initial review, Dr. Fahlberg, concluded Canez could do medium-level work, while the consultant that conducted the review on reconsideration, Dr. Hirsch, concluded Canez could do light-level work. (AR 72, 87, 89.) The ALJ erroneously stated that they both found Canez had a medium exertional capacity. (AR 23.) The ALJ also rejected, without discussion, both their opinions on Canez's ability to climb, stoop, kneel, crouch, and crawl, and whether Canez had visual limitations. (*Compare* AR 19 *with* AR 73, 86.)

ability to exercise on October 14, 2016. (AR 537.) The prior month, however, on September 9, 2016, Dr. Lancaster noted that Canez was not engaged in any exercise due to back pain, and he noted use of a cane and inability to exercise. (AR 470, 472.)[3] A subsequent test ordered by Dr. Lancaster was done by alternative procedure because Canez was unable to exercise to adequate working level on a treadmill. (AR 472, 474.) In June and July 2014, Dr. Lancaster recorded that Canez used a cane, limped, and did no exercise due to low back pain; the records inconsistently also reported that he had the ability to exercise. (AR 476, 477, 482.)

The only record cited in support of the ALJ's finding that Canez had the ability to exercise was squarely contradicted by that doctor's other records. Further, none of the doctors cited were treating Canez for his spinal impairment or related pain. Those doctors did not record any functional testing and there is no indication their cited findings were more than a cursory reflection of Canez's gait upon entering the doctor's office. In contrast, the doctors that were treating or examining Canez for his musculoskeletal problems consistently documented impairment in his gait. Dr. Johnson, a treating pain specialist, noted an antalgic gait on January 14, 2015. (AR 423.) At subsequent appointments through 2016, he documented an antalgic gait and use of a cane for support and ambulation.[4] (AR 415, 504, 511, 539, 626.) Dr. Hassman thoroughly examined Canez as to his back pain and concluded he always needed a cane. Dr. Din, his treating neurologist, repeatedly noted that Canez had an unsteady gait (although his walking was "normal"). (AR 487, 495, 501-02.) In sum, Canez's physicians that were treating him for spinal impairments and back pain consistently noted his abnormal gait and use of a cane. Similarly, the cardiologist whose

---

[3] The ALJ cited this record as one documenting Canez's walking limitations. (AR 23.) In reliance on that record, and others, the ALJ rejected, in part, the State agency medical consultants' opinions. (*Id.* (citing Ex. 15F/4).)

[4] Canez refers to this as a medical opinion by Dr. Johnson that Canez needed a cane to stand and walk. The Court does not consider the cited evidence to be a medical opinion; rather, it is Dr. Johnson's medical record documenting that Canez was using a cane on those dates and the purpose of it.

treatment included evaluating Canez's ability to exercise documented his inability to do so, and that he had a limp and used a cane.

After summarizing all the relevant records, the Court finds they consistently document Canez's gait abnormalities by the doctors to whom that finding was relevant to their treatment of Canez. Additionally, the ALJ's various findings about Canez's need for a cane were inconsistent.

**Dr. Moeen Din's Opinion**

On April 22, 2016, Dr. Din, a treating neurologist, opined that Canez could not stand or sit for six of more hours in a work day and could stand for less than one hour due to foot numbness (AR 435); had to lay down during the day; could not walk long distances due to pain; and could lift and carry less than five pounds (AR 436). The ALJ discounted Dr. Din's opinion because Canez reported pain relief for up to one year from epidural steroid injections in 2014 and 2015; physical exams had documented a normal gait, ability to exercise, and normal sensation in the lower extremities; and Canez reported an ability to take out the trash if not too heavy. (AR 23.)

The opinion of a treating physician generally is afforded more weight than a non-examining or reviewing physician's opinion. *Lester*, 81 F.3d at 830. The opinion of Dr. Din was contradicted by that of reviewing physicians Drs. Fahlberg and Hirsch. When there are contradictory medical opinions, to reject a treating physician's opinion, the ALJ must provide "specific and legitimate reasons that are supported by substantial evidence." *Id.*; *Bayliss*, 427 F.3d at 1216.

First, the ALJ discounted Dr. Din's opinion because Canez received pain relief from treatment. In 2015 and 2016, Canez told Dr. Johnson that he got "great relief" from his prior epidurals. (AR 503, 510.) Canez had epidural injections in March 2015, November 2015, and December 2016. (AR 431-32, 508, 626-27.) All of Dr. Johnson's records reflect that Canez's pain was constant and could reach 8-10/10 when aggravated, such as by standing. (*Id.*) Dr. Din's records indicate that, in June 2014, Canez reported constant shooting pain with minimal relief from oxycodone. (AR 343.) For the remainder of the

year, his pain continued but he was getting some relief from medication. (AR 346, 349, 500.) In March 2016, Dr. Din recorded that Canez continued to have low back pain, but medication provided some relief. (AR 497.) From May to September 2016, Canez reported pain with prolonged standing or sitting and that his medication was insufficient. (AR 486, 491, 494.) As of May, he desired another injection but did not have the money to travel to Tucson for the appointment (AR 494); he did not get another injection until December. Despite obtaining benefit from the injections, Canez continued to be treated for chronic pain, Dr. Din documented an unsteady gate, and Dr. Johnson documented Canez's use of a cane to ambulate. Additionally, Dr. Din was the referring doctor for the injections (AR 423); thus, his proffered opinion was formed with awareness of the impact of the injections on Canez's functioning. Critically, the pain relief provided by injections would not reduce Canez's foot numbness, which was the basis for Dr. Din's opinion that he could not stand for more than an hour and one of the reasons he needed to lay down during the day. For these reasons, this was not a legitimate reason to discount the entirety of Dr. Din's opinion.

Second, the ALJ discounted Dr. Din's opinion based on specific physical findings in the record – normal gait, ability to exercise, and normal sensation in the lower extremities. As discussed above, the ALJ cited one contradicted medical record to support her finding that Canez remained able to exercise; there is not substantial evidence to support that finding. Further, the Court concluded above that, when the record is viewed holistically, there is not substantial evidence that Canez had a normal gait. The ALJ cited three records from Dr. Din to support his finding that Canez had a normal gait. (AR (citing AR 487, 495, 502).) However, what those records (and the other records from Dr. Din) stated was that Canez's walking/tandem/heels/toes was normal but his gait was unsteady. (AR 344-45, 348, 351, 487, 492, 495, 498, 502.) These findings by Dr. Din are not inconsistent with the findings of other doctors treating Canez's symptoms due to his spinal impairment. The only controverting evidence of normal sensation cited by the ALJ was Dr. Hassman's one-time exam. In contrast, at every appointment over the course of more than two years, Dr. Din found Canez had decreased sensation. (AR 344, 347, 350, 487, 492,

495, 498, 501.) The ALJ provided no reasoning for his decision to accept a singular finding by Dr. Hassman over the treating records from Dr. Din. There is not substantial evidence to support the ALJ's finding that Canez had normal lower extremity sensation.

Third, the ALJ relied upon Canez's self-reported ability to take out the trash if it was not too heavy. The ALJ found that inconsistent with Dr. Din's opinion that Canez could not lift and carry more than five pounds regularly. (AR 23.) In February 2014, Canez reported that on an average day he walked as much as possible without back pain and took out his trash if it wasn't too heavy. (AR 229.) In the same report, when asked what kinds of things he could lift and carry, Canez stated a gallon of milk or a "very" light bag of groceries. (AR 230.) In October 2014, Canez stated that he could lift "a broom, light mop & very small bag of grocery." (AR 243.) At the January 2017 hearing, Canez testified that his maximum lifting was a gallon of milk. (AR 39.) He also testified that he had difficulty lifting things because of numbness in his hands. (AR 43-44.)

Canez's various self-reports on how much he could lift were generally consistent, although several of the items he identified do not have a set weight: trash if not too heavy, a gallon of milk, a broom, a light mop, and very light groceries. There is no evidence as to what weight trash bag he considered "too heavy." But it is not inconsistent with his testimony that the maximum weight he could lift was a gallon of milk, which weighs about eight pounds. In turn, that testimony is not inconsistent with Dr. Din's finding that he could not lift more than five pounds regularly. Therefore, this was not a legitimate reason to reject Dr. Din's opinion.

The Court concludes the ALJ failed to provide any specific, legitimate reasons supported by substantial evidence to reject the opinion of Dr. Din.

## CONCLUSION

A federal court may affirm, modify, reverse, or remand a social security case. 42 U.S.C. § 405(g). When a court finds that an administrative decision is flawed, the remedy should generally be remand for "additional investigation or explanation." *INS v. Ventura*, 537 U.S. 12, 16 (2006) (quoting *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744

(1985)); *see also Moisa v. Barnhart*, 367 F.3d 882, 886 (9th Cir. 2004). However, a district court should credit as true medical opinions and a claimant's testimony that was improperly rejected by the ALJ and remand for benefits if:

> (1) the ALJ failed to provide legally sufficient reasons for rejecting the testimony; (2) there are no outstanding issues that must be resolved before a determination of disability can be made; and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited.

*Benecke*, 379 F.3d at 594; *Garrison*, 759 F.3d at 1021 (precluding remand for further proceedings if the purpose is solely to allow ALJ to revisit the medical opinion he rejected). The Ninth Circuit holds that application of the credit as true rule is *mandatory* unless the record creates serious doubt that the claimant is disabled. *Garrison*, 759 F.3d at 1021.

Here, Defendant conceded the ALJ failed to provide a sufficient reason to reject Dr. Hassman's opinion that Canez could stand or walk for only three hours of a work day. Additionally, the Court concluded the ALJ erred in rejecting Dr. Hassman's opinion that Canez required a cane for all walking and in rejecting the entirety of Dr. Din's opinion. The record is developed and there are no outstanding issues requiring resolution before the Court can make a disability finding.

Defendant argues there are outstanding issues to be resolved on remand because there are conflicts in the record between the opinions of the examining and consulting physicians and various doctor's findings regarding Canez's gait. The ALJ noted these factual issues and had an opportunity to resolve them. However, she failed to do so and issued an internally contradictory opinion. She also relied on less than the full record in making her findings, leading to conclusions that were not supported by substantial evidence. The Court's holistic review of the medical records revealed substantial consistency among the doctors treating Canez for his spinal impairment. The only two doctors that examined Canez and offered a functional opinion, Drs. Hassman and Din, agreed that Canez cannot stand for more than three hours per workday. The record needs no further development and Defendant does not argue otherwise. If the Court were to remand for further proceedings, it would be solely for the ALJ to reconsider evidence she

has already reviewed and rejected on a legally insufficient basis. A mulligan to re-evaluate the same evidence does not qualify as a useful purpose for a remand under the credit-as-true analysis. *Garrison*, 759 F.3d at 1021-22.

Dr. Hassman opined that Canez could only stand or walk for three hours of an eight-hour work day, and Dr. Din opined that Canez could stand less than one hour. Also, Dr. Hassman found that Canez required a cane for walking. The Vocational Expert testified that a person with those limitations could not perform any work. (AR 48.) Crediting the testimony of Drs. Hassman and Din, the ALJ would be required to find Canez disabled based on the vocational expert's testimony.

Alternatively, although not argued by Canez, Medical Vocational Rule 201.09 would direct a finding of disabled based solely on crediting Dr. Hassman's improperly rejected opinion that Canez could not stand for more than three hours. The vocational expert testified that a limitation to three hours of standing or walking would place a claimant in the sedentary exertion category. (AR 49.) Canez reached the age category of closely approaching advanced age in January 2014, less than two months after his protective filing date, or within a month of his eligibility to be paid SSI benefits.[5] *See* 20 C.F.R. § 416.335. His 11th grade education is classified as limited or less (AR 24 (citing 20 C.F.R. § 416.964(b)(3)), and his prior work was unskilled (AR 45-46). Based on those categories, Rule 201.09 would require the ALJ to find Canez disabled.

After a thorough review of the entire record, the Court does not have serious doubts as to whether Canez is disabled.

Accordingly,

---

[5] In the initial and reconsideration decisions by the Commissioner, she evaluated Canez's age as closely approaching advanced age. (AR 74, 89.) At the hearing, the ALJ based his hypotheticals on Canez's current age of 53, which qualifies as closely approaching advanced age. (AR 36, 46.) However, in her decision, the ALJ classified Canez as a "younger individual age 18-49," based on the filing date of his application. (AR 24.) The regulations state that the agency will use "each of the age categories that applies to you during the period for which we must determine if you are disabled." 20 C.F.R. § 416.963. And, if a claimant is within a few months of an older age category, the agency will consider using that category if it would result in a finding of disability. *Id.*

**IT IS ORDERED** that the decision of the Commissioner is **REVERSED AND REMANDED** for an award of benefits. The Clerk of Court should enter judgment and close this case.

Dated this 20th day of May, 2019.

_____
Honorable Lynnette C. Kimmins
United States Magistrate Judge